[894 NYS2d 22]

MICHELE BEUDERT-RICHARD, Appellant, v PAMELA RICHARD, Respondent.

First Department, January 19, 2010

**APPEARANCES OF COUNSEL**

*Julie Hyman, P.C.*, Bronx (*Julie Hyman* of counsel), for appellant.

*Toback, Bernstein & Reiss LLP*, New York City (*Brian K. Bernstein* of counsel), for respondent.

**OPINION OF THE COURT**

SAXE, J.P.

Plaintiff Michele Beudert-Richard, the second wife and widow

of decedent Adam Richard and executor of his estate, commenced this action against Adam's first wife, Pamela Richard, seeking to enforce a claim to share in the proceeds of the sale of a cooperative apartment that had been the joint marital property of Adam and Pamela before their divorce.

Pamela and Adam purchased the cooperative apartment in 1978, while they were married. They took title to the co-op shares as joint tenants with rights of survivorship rather than as tenants by the entirety, since prior to the amendment of EPTL 6-2.1 and 6-2.2 on January 1, 1996 (L 1995, ch 480), co-op shares were treated as personalty rather than realty, and a married couple's ownership interest in such shares could be as joint tenants or as tenants in common, but could not be as tenants by the entirety (see EPTL 6-2.1; Stewart v Stewart, 118 AD2d 455, 457 [1986]).

On April 12, 1989, Pamela and Adam entered into a separation agreement which provided for distribution of the marital property. The paragraph of the separation agreement concerning the apartment erroneously stated that the couple owned the apartment "as tenants by the entirety," and gave Pamela exclusive possession during their child's minority, after which the apartment was to be sold and the net proceeds split. Adam also agreed to pay one half of the mortgage and maintenance for the apartment until it was sold and to maintain a life insurance policy to cover his child support obligations in the event of his death. The parties' December 1989 divorce judgment, which incorporated but did not merge their separation agreement, stated that the marital property was to be distributed pursuant to the separation agreement.

Adam thereafter married plaintiff Michele. Adam died on September 23, 1999, and his will bequeathed to Michele his ownership interest in the apartment. At the time of Adam's death, the obligation to sell the apartment under the separation agreement had not yet been triggered because his child with Pamela was then 16 years old. The proceeds of Adam's life insurance policy were turned over to Pamela in accordance with the separation agreement.

Several years after Adam and Pamela's son completed college and became emancipated, Michele and Pamela entered into an agreement dated November 21, 2007, which provided that Pamela was the owner of a one-half interest in the apartment and Michele was the beneficiary of Adam's one-half interest in the apartment, and both agreed to sell the apartment and split the

net proceeds. In January 2008, Michele and Pamela, as sellers, entered into a contract to sell the apartment for $1,385,000. However, in February, 2008, the managing agent of the cooperative insisted that the contract be amended to omit Michele's name from the contract. Pamela then filed an application in the context of the Connecticut probate proceeding concerning Adam's estate, seeking a determination that the estate did not have a legal right or interest in the apartment or the proceeds of its sale, while Michele commenced this action seeking enforcement of the separation agreement and the November 2007 contract. The Connecticut probate court declined jurisdiction with respect to all claims arising under the separation agreement.

Michele moved, pre-answer, for an order substituting the estate as plaintiff for the purposes of enforcing the separation agreement and directing Pamela to sell the apartment and equally divide the proceeds. Pamela cross-moved for an order directing that Michele was not entitled to share in the proceeds of the sale of the apartment and rescinding the November 2007 agreement between them based upon mutual mistake, maintaining that because the co-op had been owned by Adam and Pamela as joint tenants with the right of survivorship, Adam's death, which preceded the events that would trigger a sale under the separation agreement, left her the sole owner of the co-op.

The motion court denied Michele's motion to divide the net proceeds of the estate, and granted Pamela's cross motion, directing that Michele was not entitled to share in any portion of the proceeds of the sale of the apartment, rescinding the 2007 agreement and dismissing the complaint. Relying on *Matter of Violi* (65 NY2d 392 [1985]), the motion court reasoned that at the time of Adam's death the relevant provision of the separation agreement was merely an executory contract to divide the proceeds when a sale occurred that did not alter the form of its ownership, and since Adam's contract right to the sale of the co-op was not enforceable at the time of his death, his estate could not claim it (citing *Brower v Brower*, 226 AD2d 92 [1997]).

For the reasons that follow, we reverse.

*Matter of Violi* involved a situation where spouses who owned their residence as tenants by the entirety entered into a separation agreement pursuant to which they agreed to sell their residence within four years and split the net proceeds, but the wife died a year later, before the parties were divorced, with the res-

idence still unsold. Since the parties had not altered their tenancy by the entirety either by a judicial decree such as a divorce judgment, or by a written instrument satisfying General Obligations Law § 3-309 by clearly expressing an intent to convert the form of tenancy in which the property was held, the tenancy had continued to be held by the entirety; so, upon the wife's death, the husband became seized of the whole property (*Violi*, 65 NY2d at 395). Had the parties in *Violi* actually gotten the divorce before the wife's death, the property would have automatically been held as a tenancy in common and the wife's estate would have been entitled to her share.

In *Brower v Brower* (226 AD2d 92 [1997], *supra*), a small but important difference in the facts led to a different result from that in *Violi*. Like *Violi*, the parties held the marital residence by the entirety, and, like *Violi*, they entered into a separation agreement providing for its sale, but one party died before either the sale or the divorce. However, unlike *Violi*, in *Brower*, "[t]he date prescribed in the agreement for defendant [wife] to vacate the property so that it could be sold preceded decedent's death," and therefore the husband in *Brower* had a viable breach of contract claim against the surviving wife at the time of his death, which viable right entitled his estate to seek specific performance of the agreement after his death (*id.* at 94).

In the case now before us, unlike either *Violi* or *Brower*, the parties actually obtained a final judgment of divorce, incorporating the separation agreement in which they expressed their mutual belief that they held the co-op shares by the entirety and the concomitant, if implicit, expectation that upon the divorce their tenancy would be automatically converted into a tenancy in common.

While a married couple's tenancy by the entirety automatically converts into a tenancy in common upon entry of a divorce judgment (*see Goldman v Goldman*, 95 NY2d 120, 122 [2000]; *Freigang v Freigang*, 256 AD2d 539, 539-540 [1998]; 3-27 Warren's Weed, New York Real Property § 27.63 [5th ed]), the same does not hold true for a married couple's joint tenancy. However, General Obligations Law § 3-309 allows a married couple to freely "convey or transfer real or personal property directly, the one to the other, without the intervention of a third person." Therefore, as the court observed in *Matter of Violi* (65 NY2d at 395), a married couple may convert the form of tenancy in which they hold property by expressing in a writing an intent to do so.

While Adam and Pamela did not specifically state in their separation agreement an intent to *convert* their ownership of

the co-op from joint tenancy to a tenancy by the entirety, as they had a right to do, their failure to do so appears to be based on their (albeit incorrect) understanding that their ownership already took that form. There can be little doubt from the language of their separation agreement that Adam and Pamela intended, and assumed, that upon entry of their divorce judgment they would automatically become tenants in common without any right of survivorship. Not only is there no indication that Adam intended to waive his (or his estate's) property interest in the co-op, or that Pamela thought he had done so, but in fact, the record contains numerous indications to the contrary.

The spouses' mutual expectation that entry of the divorce judgment would result in a tenancy in common is apparent from the language of their separation agreement. Importantly, that Pamela and Adam both proceeded in the belief that the divorce would convert their ownership of the apartment into a tenancy in common is established by Pamela's entry into the 2007 agreement to sell the apartment, which stated "Michele is the Executrix of the Estate of Adam Richard who died owning the other one-half ($1/2$) interest in said apartment." In fact, Pamela did not claim the sole right of survivorship until after the managing agent of the cooperative insisted that the contract of sale be amended to provide that Michele's name be omitted from the contract. Moreover, Adam's will, where he stated, "I give, devise and bequeath to my wife, Michele F. Beudert, my entire ownership interest in [the apartment], to be hers outright," reflects his understanding that upon his divorce from Pamela the form of their ownership of the co-op would leave them each with an ownership interest in the event of his death.

■ The foregoing constellation of facts and events demonstrates the inaccuracy of the motion court's observation that "there is no evidence in the record that either Adam or defendant evinced an intent to alter their joint tenancy with right of survivorship." Although there is no direct assertion of intent to *alter* their joint tenancy, that was due to the fact that neither party viewed their tenancy as a joint tenancy at that time; there is substantial evidence that they intended that following the divorce, their ownership of the co-op would automatically become a tenancy in common. The court's observation that the parties provided for other "entitlements in the event of a party's demise" refers merely to boilerplate waivers and standard provisions in the separation agreement, and the presence of those

provisions does not negatively reflect on the absence of any provision to terminate the right of survivorship regarding ownership of the apartment.

The dissent employs what we believe to be an overly strict formalistic application of General Obligations Law § 3-309. It ignores the clear understanding of both husband and wife at the time they entered into their 1989 separation agreement as to how they would own the apartment upon entry of the divorce judgment, and instead relies on the lack of formal language expressly stating an intent to change the form of ownership of the apartment. In our view, this is unnecessarily rigid. For the law to be given the respect it is due, it must be applied so that the clear facts and intentions are recognized, and not ignored due to technical legalistic requirements. There may be times when the law imposes exacting requirements in regard to the language that must be used in a document to render it legally effective. This is not such a circumstance. The result we reach in this case, on these facts, will not interfere, as the dissent warns, with certainty in title to real property; we are satisfied that the suggested danger to bona fide purchasers is vastly exaggerated.

So, at a minimum, the record evidence raises issues of fact as to whether the language of the separation agreement demonstrates an understanding that the ownership of the apartment was intended to be altered upon their divorce so as to eliminate any existing right of survivorship. This issue alone precludes the entry of final judgment declaring that Adam's estate is not entitled to share in any portion of the proceeds of the sale of the apartment.

■ Nor do we agree that rescission of the 2007 agreement and dismissal of the complaint was warranted as a matter of law. It is true that mutual mistake of fact may constitute grounds for rescission of an instrument (*see Matter of Gould v Board of Educ. of Sewanhaka Cent. High School Dist.*, 81 NY2d 446, 453 [1993]). But, even if we accepted as fact the premise that the parties' 2007 agreement was based on a mutual mistake regarding the legal form of Adam and Pamela's ownership interest in the apartment, under the unique circumstances reflected in the record, rescission, an equitable remedy, may not be appropriate as a matter of equity. In any event, since the separation agreement may be interpreted to establish the couple's expression of mutual intent that upon divorce the property would be owned as tenants in common, rescission as a matter of

law in the context of a motion pursuant to CPLR 3211 was at least premature.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Deborah A. Kaplan, J.), entered December 2, 2008, which, to the extent appealed from as limited by the briefs, rescinded a 2007 agreement to sell the cooperative apartment and share equally in the proceeds and dismissed the complaint seeking to enforce that agreement, should be reversed on the law, without costs, the rescission of the agreement vacated, the complaint reinstated, and the matter remanded for further proceedings.

MOSKOWITZ, J. (dissenting). I would affirm. The reversal the majority propounds disregards completely centuries-old black letter law controlling joint ownership of property.

Pamela Richard with her then husband Adam Richard purchased a cooperative apartment in 1978. The stock certificate indicates that they took title to the co-op shares as "tenants with rights of survivorship." They never changed the form of ownership of these co-op shares.

In December 1989, Pamela and Adam divorced via a separation agreement dated April 12, 1989. The separation agreement erroneously stated that Pamela and Adam owned the co-op shares as "tenants by the entirety" as opposed to joint tenants with rights of survivorship as the stock certificate reflects. The separation agreement provided that Pamela would have exclusive possession during the minority of her and Adam's only child, Alexander, after which they would sell the apartment and split the proceeds. The separation agreement became incorporated into the parties' judgment of divorce that provided for the distribution of the marital property pursuant to the separation agreement.

Some time later, Adam remarried. On September 23, 1999, Adam died. His will granted plaintiff, his widow, what he thought was his continued ownership interest in the apartment.

Once Alexander completed college, defendant and plaintiff entered into an agreement dated November 21, 2007, in which they agreed to sell the apartment and split the net proceeds. This agreement too assumed that defendant was the owner of only a one-half interest in the apartment and that plaintiff, by virtue of Adam's will, was the beneficiary of his one-half interest.

In January 2008, plaintiff and defendant both entered into a contract to sell the apartment to a third party. However, prior

to the closing, the managing agent of the co-op required an amendment to the contract of sale to omit plaintiff's name. Defendant subsequently contested plaintiff's legal interest in the apartment and its proceeds.

Plaintiff commenced this action seeking to enforce the separation agreement and the November 2007 contract between herself and defendant. Before issue was joined, plaintiff moved for an order substituting the estate as plaintiff for the purposes of enforcing the separation agreement. Defendant cross-moved for an order declaring that plaintiff was not entitled to share in the proceeds of the sale of the apartment. She also moved to rescind the November 2007 agreement because she was the sole owner of the apartment and had entered the November 2007 agreement under the mistaken assumption that she was not. The motion court directed that Michele was not entitled to share in the proceeds of the sale of the apartment because upon Adam's death, defendant became the sole owner.

The estate has no property interest in the apartment because the separation agreement did not change the status of the property from a joint tenancy with right of survivorship. A "joint tenancy" is "a tenancy with two or more co-owners who take identical interests simultaneously by the same instrument and with the same right of possession" (Black's Law Dictionary 1505 [8th ed 2004]). A "tenancy in common" is a "tenancy by two or more persons, in equal or unequal undivided shares, each person having an equal right to possess the whole property but no right of survivorship" (id. at 1506). A joint tenancy differs from a tenancy in common because each joint tenant has a right of survivorship to the other's share. Another form of joint property ownership is "tenancy by the entirety." This type of property ownership is only available to a husband and wife. It is similar to joint tenancy because, upon the death of either husband or wife, the survivor automatically acquires title to the share of the deceased spouse (id. citing Robert Kratovil, Real Estate Law, at 198 [6th ed 1974]). Upon divorce, a tenancy by the entirety automatically converts to a tenancy in common (Matter of Violi, 65 NY2d 392, 395 [1985]).

However, defendant and Adam did not hold the shares in the apartment as tenants by the entirety, but rather as joint tenants with rights of survivorship. A joint tenancy with rights of survivorship does not convert to a tenancy in common upon the divorce of the parties. Thus, defendant and Adam's divorce could not convert the form of ownership to a tenancy in common. Ac-

cordingly, once Adam died, defendant became the sole owner of the apartment.

I do not agree with the majority that the separation agreement's mere expression of Adam and defendant's mistaken belief that they held the co-op shares as tenants by the entirety changed the status of the property from a joint tenancy with right of survivorship to tenants in common or any other form of ownership. First, as the majority recognizes, prior to 1996 it would not have been legally possible for defendant and Adam to have held the co-op shares as tenants by the entirety. They entered the separation agreement in 1989. Accordingly, it is irrelevant that defendant and Adam thought they held the shares as tenants by the entirety. Nor would it have been possible for the parties to evince an intent in the separation agreement to hold the shares as tenants by the entirety, because to do so would have been a legal impossibility.

Nevertheless, even if they could have held the co-op shares as tenants by the entirety in 1989, "[a]s a general matter, title to estates in land should be altered only by clear expressions of intent" (*Matter of Violi*, 65 NY2d at 396). While General Obligations Law § 3-309 permits a husband and wife to "make partition or division of . . . real property held by them as tenants in common, joint tenants or tenants by the entireties," the separation agreement at issue merely established the event that would trigger the time in the future to sell the property. The parties' mistaken assumption that they held the property as tenants by the entirety is just that, a mistake. "There is no language in the agreement evincing an intent to alter the form of ownership." (*Violi* at 396.) The separation agreement was therefore insufficient to satisfy the requirements of General Obligations Law § 3-309 to "make partition or division of . . . real property."

Nor is defendant's recognition in the November 2007 agreement that "Adam Richard . . . died owning the other one-half (1/2) interest in said apartment" sufficient to change the form of ownership. Defendant's adoption of that language in the 2007 agreement relied on the same mistaken assumption she made in the separation agreement, namely that she owned the property as a tenant by the entirety. Similarly, when Adam bestowed his one-half interest in the apartment to plaintiff, this was also based on the same mistaken assumption.

While this result may contradict the assumption of the parties, that assumption was based on a mistake that kept repeating itself with each step Adam and defendant took concerning

the property. As the majority admits, "there is no direct assertion of intent to *alter* their joint tenancy." But, a "direct assertion of intent" is precisely what is necessary to alter the form of ownership (*Violi* at 396). It remains that there was nothing Adam and defendant did, no action they took, to change the form of ownership of the shares to the apartment. For example, they could have changed the stock certificate to hold the co-op shares as tenants in common.

Respect for the form of property ownership and the concomitant public policy favoring certainty in title to real property dictate this result (*see Violi*, 65 NY2d at 396 ["(i)n reaching this conclusion, we are mindful also of a public policy favoring certainty in title to real property, both to protect bona fide purchasers and to avoid conflicts of ownership which may engender needless litigation"]).

Finally, contrary to the majority's conclusion, it was correct for the motion court to rescind the November 2007 agreement between plaintiff and defendant to split the proceeds of the apartment. A contract entered into under mutual mistake of fact is voidable and subject to rescission (*Matter of Gould v Board of Educ. of Sewanhaka Cent. High School Dist.*, 81 NY2d 446, 453 [1993]).

BUCKLEY, McGUIRE and ACOSTA, JJ., concur with SAXE, J.P.; MOSKOWITZ, J., dissents in a separate opinion.

Order and judgment (one paper), Supreme Court, New York County, entered December 2, 2008, reversed, on the law, without costs, the rescission of the agreement vacated, the complaint reinstated, and the matter remanded for further proceedings.